UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| DALLAS M. CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 1:05-CV-160 |
| DEPUTY DOUG ROBERTSON, individually ) | Chief Judge Curtis L. Collier |
| and as a member of the Bledsoe County, TN ) | |
| Sheriff's Department, BOB SWAFFORD, as ) | |
| Sheriff of Bledsoe County, TN, and BLEDSOE ) | |
| COUNTY, TN ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **MEMORANDUM**

Before the Court is Defendants Deputy Doug Roberson[1], Sheriff Bob Swafford, and Bledsoe County, TN's (collectively "Defendants") motion for summary judgment (Court File No. 39) and accompanying memorandum in support (Court File No. 46). Defendants also filed a supplemental memorandum of law in support of their motion (Court File No. 58). Plaintiff filed a response in opposition to Defendants' motion (Court File No. 53) and a motion requesting an extension to complete his response (Court File No. 52). The Court granted Plaintiff's request for an extension of time within which to complete his response and ordered Plaintiff to do so on or before January 10, 2007 (Court File No. 56). However, Plaintiff did not file his brief, which completed his

---

[1] In his complaint, Plaintiff named one of the defendants as Deputy Doug Robertson and in one instance, Robinson. However, it is clear from Defendant Roberson's affidavit filed in support of Defendants' motion for summary judgment that his name is actually Douglas Roberson (Court File No. 40). The Court has used the name Robertson in the caption of the case. However, it has used the correct spelling of defendant's surname, Roberson, throughout this memorandum and the accompanying order.

response, until January 31, 2007 (Court File No. 61). Although Plaintiff's brief is clearly untimely, the Court will consider it.[2] Defendants filed a reply to Plaintiff's response (Court File No. 62).

## I. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of

---

[2]The Court has decided to consider this brief because it will also be considering Defendants' supplemental brief, even though it was not properly filed under E.D.TN. LR 7.1(d). According to this rule, supplemental briefs can only be filed with leave of the Court unless a party is calling to the Court's attention developments occurring after the party's brief was filed, and even then the brief can only be five pages long. Defendants filed a motion for permission to file a supplemental brief but did not wait on the Court's ruling before filing the brief. Furthermore, even if the information included in the brief could be characterized as occurring after the brief was filed, the brief was longer than five pages. Nonetheless, the Court found the supplemental brief to be helpful and will consider it. Because the Court is giving Defendants leeway in the filing of their supplemental brief, the Court will give Plaintiff some leeway in filing his brief late.

fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.     RELEVANT FACTS

The Court is familiar with this case since it ruled on Defendants' motion for partial summary judgment a few weeks ago. In the Memorandum accompanying the Order granting partial summary judgment, the Court adopted the facts from a memorandum accompanying an order granting summary judgment in *Clark v. Robertson*, et. al., No. 1:03-CV-268 (E.D. Tenn. 2004), a prior action between these parties involving the same claims. The Court did so because the Court was not aware of any facts that had changed. However, to resolve this motion, the Court must point to some facts that have slightly changed since the prior action.

In the instant case, the affidavits of both Rhonda Sills ("Ms. Sills") and Deputy Roberson have been revised to reflect that after Ms. Sills spoke to Frances Clark ("Ms. Clark"), Ms. Sills met

with Deputy Roberson, told him everything Ms. Clark had revealed to her,[3] and agreed that Plaintiff had probably injured Ms. Clark and should be questioned in such regard. (Court File No. 41, Affidavit of Rhonda Sills ("Sills Aff."), ¶ 8; Court File No. 40, Affidavit of Douglas Roberson ("Roberson Aff.", ¶ 9). Ms. Sills also told Deputy Roberson Ms. Clark was afraid of her son arriving at the hospital. *Id*. at ¶ 9.

Defendants have also attached the affidavit of Sandra Melton, custodian of medical records at Erlanger Bledsoe County Hospital, and Ms. Clark's medical records for the injuries that served as the basis for Plaintiff's domestic assault and abuse of adult charges. (Court File No. 45, Parts 1 and 2). The nursing notes entered at the time of Ms. Clark's admission, 11:00 a.m., stated "numerous bruises noted . . .[patient][4] request[s] Sheriff's office be called." *Id*. at part 2, p. 10. The notes go on to show the Sheriff's department arrived to speak to the patient at 3:30. *Id*. Soon thereafter, there is an entry stating the nurse spoke to someone from Human Protective Services and was told this was a case for the local police department. *Id*.

To the extent there is no conflict, the Court adopts the facts as stated in the Memorandum issued in conjunction with the Order granting Defendants' motion for summary judgment in *Clark*, No. 1:03-CV-268, Court File No. 19 at 2-8. However, if a conflict exists between the facts as stated in the previous action and the facts outlined in the preceding paragraphs, the facts in the preceding paragraphs prevail.

---

[3]Ms. Clark revealed when she returned home that day, she ran her car into a fence, which damaged the vehicle. She went on to say her son, Plaintiff, pulled her from the house through the gravel to the car to show her what she had done. She also stated her son hit her whenever she did not do what he wanted. Sills Aff. at ¶ 4.

[4]Although the chart actually said "pt", testimony given by Dr. Bownds, Ms. Clark's physician during this visit, establishes "pt" means patient. *See* Court File No. 58, Deposition of Dr. Bownds, at 27-28.

4

As noted above, in the instant action the Court has already granted Defendants' motion for partial summary judgment, which left Plaintiff with claims for false arrest, false imprisonment, and malicious prosecution under federal statutory, state statutory, and state common law stemming from his arrest for domestic abuse of an adult. Defendants now move for summary judgment on those claims.

## III. DISCUSSION

Plaintiff alleges, under federal statutory, state statutory and state common law, Deputy Roberson falsely arrested, falsely imprisoned, and maliciously prosecuted him for domestic abuse of an adult. He alleges Sheriff Swafford and Bledsoe County, TN are liable since they "had either actual or constructive knowledge of these problems but has [sic] failed or refused to act to prevent further harm or abuse caused by this officer." (Compl. ¶ 5). Defendants move for summary judgment on all of these claims, arguing this action is barred by the applicable statute of limitations, and in the alternative, Defendants possessed probable cause to arrest Plaintiff. Defendants also argue they are entitled to qualified immunity.[5] The Court will address each of Defendants' arguments in turn.

### A. Statute of Limitations

Defendants argue Plaintiff's claims are time-barred since his causes of action accrued on August 6, 2002, and this action was not commenced until June 1, 2005. Defendants acknowledge Plaintiff originally brought suit on August 4, 2003, but argue since that case was voluntarily

---

[5]Defendants also moved for summary judgment on Plaintiff's claims regarding the conditions of confinement at the Bledsoe County Jail. Since the Court granted Defendants' motion for partial summary judgment as to these claims, there is no need to discuss this argument. *See* Court File Nos. 67 and 68.

dismissed under Fed. R. Civ. P. 41(a)(1) and such a dismissal does not toll or affect the continuous running of the applicable statutory time period, it is as if the suit was never brought. Additionally, Defendants argue the Tennessee saving statute does not apply because this Court's jurisdiction is founded upon a federal question rather than diversity jurisdiction. Defendants also argue the saving statute does not apply to government entities. In the alternative, Defendants argue if a Tennessee saving statute does apply, the correct one to be applied is Tenn. Code Ann. § 28-1-115, and it provides no relief to Plaintiff since the previous action was not dismissed for lack of jurisdiction.

Plaintiff argues the complaint was timely filed since the previous suit was voluntarily dismissed, and this case was re-filed within one year of the date of the voluntary dismissal. Plaintiff relies on *Wilson v. Garcia*, 471 U.S. 261 (1985), for the proposition that the statute of limitations for actions brought under 42 U.S.C. § 1983 as well as closely related questions of tolling and saving statutes are governed by state law. Plaintiff argues Tenn. Code Ann. 28-1-105, which permits an action dismissed other than on the merits to be refiled within one year, saves this suit from being barred by the statute of limitations.

When addressing statute of limitations questions regarding § 1983 causes of action, courts apply the statute of limitations applicable to personal injury cases under state law. *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006); *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). In addition to adopting the state's statute of limitations, "federal courts are obligated to apply state tolling statutes in § 1983 actions." *Perreault v. Hostetler*, 884 F.2d 267, 270 (6th Cir. 1989). Tenn. Code. Ann. § 28-3-104, which prescribes a one year limitation period, is the appropriate statute of limitation to be applied to a § 1983 case arising in Tennessee. *Burkhart v. Randles*, 764 F.2d 1196, 1200 n.5 (6th Cir. 1985). Similarly, under the Tennessee Governmental Tort Liability

6

Act, actions against governmental entities must be brought within one year of the date the cause of action accrued. Tenn. Code Ann. § 29-20-305(b) (2006). Therefore, all of Plaintiff's claims must have been brought within one year of the accrual of such claims unless a saving statute applies. The Court will first address if a saving statute applies to the federal claims and then the state claims.

1. **Federal Claims**

The Court carefully considered Defendants' arguments that the previous dismissal pursuant to Fed. R. Civ. P. 41(a)(1) left the action as if it were never brought and did not toll the statute of limitations period. While Defendants cited cases in support of this proposition, none of the cases cited was a § 1983 case, where the Court is bound to apply not only the statute of limitations in the relevant state but also the tolling statutes. Therefore, the Court finds in addition to adopting the state statute of limitations period, the Court must also adopt the state saving statute. Since Tennessee has two saving statutes, Tenn. Code Ann. §§ 28-1-105(a) and 28-1-115, the Court must decide which one is applicable to this case.

Tenn. Code Ann. § 28-1-105(a) provides:

If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest . . . .

Conversely, Tenn. Code Ann. § 28-1-115 provides:

Notwithstanding any applicable statute of limitation to the contrary, any party filing an action in a federal court that is subsequently dismissed for lack of jurisdiction shall have one (1) year from the date of such dismissal to timely file such action in an appropriate state court.

Tenn. Code Ann. §§ 28-1-105 and 28-1-115 share a common purpose, that is, "to provide

a plaintiff with an opportunity to renew a suit if a complaint is dismissed by any judgment or decree that does not conclude the right of action." *Nance v. City of Knoxville*, 883 S.W.2d 629, 631 (Tenn. Ct. App. 1994). Tenn. Code Ann. § 28-1-105 was the first of these two statutes to be enacted, and it was construed as applying not only to cases initially filed in state court but also to cases filed first in federal court and then dismissed on any ground not concluding the plaintiff's right of action. *Green v. Price*, 385 S.W.2d 127, 128-130 (Tenn. Ct. App. 1964); *Stuber v. Louisville & Nashville R.R.*, 87 S.W. 411, 413-14 (1905); *Hooper v. Railroad*, 60 S.W. 607, 609 (Tenn. 1900).

"The legislative debates and materials regarding Tenn. Code Ann. § 28-1-115 reveal that the General Assembly had only one purpose in mind when it enacted the statute. The General Assembly was concerned that T.C.A. § 28-1-105(a) may not apply when the initial complaint is filed in federal court and later dismissed for lack of jurisdiction." *Rector v. Dacco, Inc.*, No. M2005-00294-COA-R9-CV, 2006 WL 1749525, at *4 (Tenn. Ct. App. June 26, 2006).[6] Therefore, it appears Tenn. Code Ann.§ 28-1-115 was enacted solely to make clear that complaints initially filed in federal court but then dismissed for lack of jurisdiction could be re-filed in state court within a year of the dismissal. This, in turn, means Tenn. Code Ann. § 28-1-105(a) applies in all situations except where the case was filed in federal court and dismissed for lack of jurisdiction.[7] *See State v. Davis*, 173 S.W.3d 411, 415 (Tenn. 2005) ("When two statutes seemingly address the matter in question, and one is special and particular and the other is general, then the general statute will be construed so as to

---

[6]The Court was unable to locate the legislative debates and materials regarding Tenn. Code Ann. §§ 28-1-105(a) and 28-1-115, so it relied on the statements of the state court, which apparently had access to such materials.

[7]Although the *Rector* court called into question whether a plaintiff whose complaint is dismissed from federal court for any reason other than lack of jurisdiction can take advantage of either Tenn. Code Ann. § 28-1-105(a) or Tenn. Code Ann. § 28-1-115, it never actually decided the issue. *See Rector*, 2006 WL 1749525, at * 4 n. 11.

operate on all subjects introduced therein except the particular one which is the subject of the special provision.").

In this case, Plaintiff filed his initial suit in federal court. Although Plaintiff filed the suit in federal court, it was voluntarily dismissed rather than dismissed for lack of jurisdiction. Thus, the saving statute that applies is Tenn. Code Ann. § 28-1-105(a). Since Plaintiff re-filed his suit within one year of the voluntary dismissal, his federal claims against Defendants are timely filed. Therefore, the Court will **DENY** Defendants' motion for summary judgment on statute of limitations grounds as to the Plaintiff's federal claims.

### 2. State and Common Law Claims

Plaintiff's state and common law claims for false arrest, false imprisonment, and malicious prosecution are against Bledsoe County, TN, Sheriff Swafford in his official capacity, and Deputy Roberson in his individual and official capacities. These claims are governed by the Tennessee Governmental Tort Liability Act ("TGTLA"). As noted above, such actions must be brought within one year of the date the cause of action accrued. Tenn. Code Ann. § 29-20-305(b). Courts have uniformly held saving statutes may not be applied to extend the period within which an action must be filed against a governmental entity. *See Nance,* 883 S.W.2d at 631-32; *Rael v. Montgomery County*, 769 S.W.2d 211, 213-14 (Tenn. Ct. App. 1988); *Williams v. Memphis Light, Gas, and Water Div.*, 773 S.W.2d 522, 523 (Tenn. Ct. App. 1988). Protected entities include counties, municipalities, and other local governmental agencies. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001). Additionally, county employees acting in their official capacities are also protected since suits against county employees acting their official capacities are deemed to be suits against the county itself. *Cf. Cox v. State*, 399 S.W.2d 776, 778 (Tenn. 1965) (holding suits against state

employees acting in their official capacities are deemed to be suits against the State itself).

Plaintiff's cause of action for his false arrest and false imprisonment claims accrued on August 6, 2002, the date of his arrest. The complaint for the instant action was not filed until June 1, 2005, well over one year after these claims accrued. Since saving statutes do not apply to suits against the county and its employees, Plaintiff's claims against Bledsoe County, TN, Sheriff Swafford in his official capacity, and Deputy Roberson in his official capacity are time-barred. While Tennessee courts have held saving statutes do not apply to suits against governmental entities, they have not decided whether saving statutes apply to suits against governmental employees in their individual capacities. This Court visited this issue in another case and held Tenn. Code Ann. § 105(a) applies to suits against governmental employees in their individual capacities. *See Baker v. Snyder*, No. 1:05-CV-152, 2006 WL 2645163, at *9-11 (E.D. Tenn. September 14, 2006). Since Plaintiff filed this suit within a year of his voluntary dismissal and the saving statute does apply to claims against governmental employees in their individual capacities, Plaintiff's claims against Deputy Roberson in his individual capacity are not time-barred.[8]

Therefore, the Court will **GRANT** Defendants' motion for summary judgment on statute of limitations grounds as to Plaintiff's claims against Bledsoe County, TN, Sheriff Swafford in his official capacity, and Deputy Roberson in his official capacity. However, because Plaintiff's claim against Deputy Roberson in his individual capacity was timely filed, the Court will **DENY** Defendants' motion for summary judgment on statute of limitations grounds as to that claim.

---

[8]The Court was unable to do an analysis of the timeliness of Plaintiff's claim for malicious prosecution since neither Defendants nor Plaintiff presented the Court with information as to when or if Plaintiff's arrest terminated in his favor. Without this information, the Court does not know when the cause of action for the malicious prosecution claim accrued. *See Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992) ("A cause of action for malicious prosecution accrues when a malicious suit is finally terminated in the defendant's favor.").

## B. Qualified Immunity

Defendants argue they are entitled to qualified immunity on Plaintiff's federal claims for false arrest, false imprisonment and malicious prosecution because probable cause existed to arrest Plaintiff for domestic assault and abuse of an adult. In response to this argument, Plaintiff argues "[t]he Sixth Circuit and this Court ave [sic] consistently held that brutality and false arrest cases are not subject to Qualified Immunity as a matter of law, but that if it remains an issue at all, it becomes an issue to be charged to the jury as a defense to the charges, and to be decided, if properly, by the jury." (Court File No. 61, Plaintiff's Brief in Support of Objection to Summary Motion ("Pl.'s Brief"), at 3). Plaintiff cites no authority for his position.

Qualified immunity shields governmental officials, including police officers, acting within the scope of their official duties from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006). The Court follows a three-step inquiry in determining whether an officer is entitled to qualified immunity and decides: (1) whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show a constitutional violation has occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)).[9] Thus, government officials are shielded from civil damages liability "as

---

[9] Depending on the panel, the Sixth Circuit may use the two-step approach as outlined in *Saucier v. Katz*, 533 U.S. 194 (2001), or the three-step approach outlined in *Feathers v. Aey,* 319

long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The plaintiff carries the burden of establishing a defendant is not entitled to qualified immunity. *Cartwright v. City of Marine City*, 336 F.3d 487, 490-91 (6th Cir. 2003).

The federal constitutional right implicated here is the Fourth Amendment right to be arrested only upon probable cause. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997). Probable cause exists when the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Whether probable cause exists is determined under a reasonableness standard based on all the facts and circumstances within the officer's knowledge at the time of the arrest or seizure. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). The Court looks "at this question through the lens 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).

In this case, Plaintiff was charged with domestic assault, abuse of an adult, and resisting arrest. To the extent probable cause existed for any one of these charges, Plaintiff's Fourth Amendment rights were not violated. *Lyons*, 417 F.3d at 573; *see also Weaver v. Shadoan*, 340 F.3d

---

F.3d 843 (6th Cir. 2003). *See Barnes*, 449 F.3d at 715 (applying three-step approach); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005) (stating "both the two-step approach and the three-step approach can be said to capture the holding of *Saucier* . . . ."); *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (applying two-step approach); *Sample v. Bailey*, 409 F.3d 689, 696 n.3 (6th Cir. 2005) (applying three-step approach and explaining why it is not inconsistent with *Saucier*).

398, 407 (6th Cir. 2003) (holding "although the Officers lacked probable cause to arrest Weaver for evading arrest, the Officer had probable cause to arrest Weaver for drug possession. Accordingly, Weaver's Fourth Amendment rights were not violated."). As the Court previously noted, Plaintiff admitted he pleaded guilty in state court to the charge of resisting arrest. *See Clark v. Robertson* et. al., No. 1:03-CV-268, Court File No. 19 at 16. Therefore, Plaintiff is estopped from arguing in this Court that Deputy Roberson acted without probable cause in arresting him for resisting arrest. *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (citing *Pierson v. Ray*, 386 U.S. 547, 557 (1967)). Since probable cause existed for at least one of the charges, i.e., resisting arrest, Plaintiff's Fourth Amendment rights were not violated.

Probable cause also existed to arrest Plaintiff for domestic assault. Tenn. Code Ann. § 39-13-111 provides as follows:

(a) As used in this section, "family or household member" means spouse, former spouse, person related by blood or marriage, or person who currently resides in or in the past has resided with that person as if a family or a person who has a child or children in common with that person regardless of whether they have been married or resided together at any time.

(b) A person commits domestic assault who commits an assault as defined in § 39-13-101 against a person who is that person's family or household member.

(c)(1) Domestic assault is punishable the same as assault in § 39-13-101.

Tenn. Code Ann. § 39-13-101 defines assault as:

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

13

Finally, Tenn. Code Ann. § 36-3-619 provides:

> (a) If a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or felony, or was committed within or without the presence of the officer, the preferred response of the officer is arrest.

Based upon the facts and circumstances known to Deputy Roberson at the time of Plaintiff's arrest on August 6, 2002, a reasonable, prudent officer would have believed Plaintiff committed the offense of domestic assault. Ms. Clark, Plaintiff's mother, arrived at Erlanger/Bledsoe County Hospital with multiple bruises and scratches on her body. Medical personnel believed she had been physically abused, and in turn, notified the Sheriff's office. Deputy Roberson responded and conducted an investigation. He visited with the patient and noticed bruising on Ms. Clark's breasts, arms, and legs, which the treating physician, Dr. Bownds, advised were not consistent with a fall. Dr Bownds told Deputy Roberson Ms. Clark had stated Plaintiff had beaten her up.[10] Ms. Sills, a Chief Deputy Clerk in the Bledsoe County Circuit Court Clerk's office, received a call from the sheriff's office asking for someone to come to the hospital to assist Ms. Clark with filing an order of protection or assault warrant. Ms. Sills arrived at the hospital and spoke with Ms. Clark. Afterwards, Ms. Sills met with Deputy Roberson and agreed Ms. Clark had probably been injured by Plaintiff. She also told Deputy Roberson Ms. Clark was afraid Plaintiff would arrive at the hospital.

Plaintiff argues a disputed fact exists as to whether probable cause exists since, in the previous action, Plaintiff filed an affidavit of Ms. Clark, which included a statement she had not told anyone Plaintiff struck her, and he had not done so. While Plaintiff filed that affidavit in the

---

[10] Dr. Bownds stated in his deposition he did not remember this conversation but does not deny it occurred. Court File No. 59, Deposition of Dr. Bownds, at 30-31.

14

previous action, the Court notes Plaintiff did not file it in this action. Therefore, that evidence is not currently before the Court. Even if it were, it still would not create a dispute. The guilt or innocence of Plaintiff is not the issue. The issue is whether Deputy Roberson reasonably believed probable cause existed to arrest Plaintiff for domestic abuse. As the Court has already noted, it must view this "question through the lens 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Lyons*, 417 F.3d at 573 (quoting *Klein,* 275 F.3d at 550). While it is now disputed whether Ms. Clark told anyone her son injured her, it is not disputed that at the time of the arrest both Dr. Downds and Ms. Sills, two people who had consulted with Ms. Clark, agreed that Plaintiff was the one who injured Ms. Clark and expressed this view to Deputy Roberson. At the time of the arrest, Deputy Roberson had no reason to doubt what Dr. Downds and Ms. Sills said was true. As such, probable cause existed to arrest Plaintiff for domestic assault.

Because Plaintiff cannot show Deputy Roberson lacked probable cause, no constitutional violation occurred and Defendants are entitled to qualified immunity on Plaintiff's federal claims. Moreover, since Plaintiff's state and common law claims for false arrest, false imprisonment and malicious prosecution all include the common element of probable cause, the Court's finding Deputy Roberson had probable cause to arrest Plaintiff necessarily precludes any recovery on those claims as well. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment on qualified immunity grounds as to all of Plaintiff's claims.

## IV.  CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' motion for summary judgment on statute of limitation grounds as to Plaintiff's federal claims. The Court will also **DENY**

15

Defendants' motion for summary judgment on statute of limitation grounds as to Plaintiff's state and common law claims for false arrest and false imprisonment against Deputy Roberson in his individual capacity. However, the Court will **GRANT** Defendants' motion for summary judgment on statute of limitations grounds as to Plaintiff's claims against Bledsoe County, TN, Sheriff Swafford in his official capacity, and Deputy Roberson in his official capacity. Because the Court will also **GRANT** Defendants' motion for summary judgment on qualified immunity grounds as to Plaintiff's federal claims, and this necessarily precludes recovery on Plaintiff's state and common law claims, Plaintiff's complaint will be **DISMISSED**.[11]

An order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[11]The Court noted in its Memorandum accompanying the Order granting Defendants' motion for partial summary judgment that Plaintiff's claim for excessive force under the Fourth, Fifth, Eighth and Fourteenth Amendments may still be viable as well. However, after reflecting upon the Court's Memorandum and Order in *Clark v. Robertson*, No. 1:03-CV-268, the Court realized that in the previous action, the Court did recognize Plaintiff had made such claims but granted Defendants qualified immunity on all of Plaintiff's claims. The Court did not set aside its finding of qualified immunity on this issue and as such it is no longer a viable claim.